# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **DAVID JOLLONE KING** | § | |
| | § | |
| **V.** | § | **A-16-CA-0900-LY** |
| | § | |
| **LORIE DAVIS** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates.

Petitioner is pro se and has paid the filing fee in this matter. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Docket Entry "DE" 1), his Memorandum in support of his application (DE 2), Respondent's Answer (DE 22), and Petitioner's Traverse (DE 26) and Petitioner's additional Traverse (DE 29). For the reasons set forth below, the undersigned recommends that Petitioner's Application for Writ of Habeas Corpus be **denied**.

## STATEMENT OF THE CASE

Respondent has custody of Petitioner pursuant to a judgment and sentence imposed by the 427th District Court of Travis County, Texas. A jury found Petitioner guilty of capital murder and the trial court sentenced him to a term of life imprisonment without the possibility of parole. In his habeas petition Petitioner asserts he was denied his right to due process and a fair trial and that he was denied his right to the effective assistance of trial and appellate counsel.

## BACKGROUND

**A.      Factual background**

The following facts are taken from the Texas Court of Appeals' decision in Petitioner's appeal:

> On January 6, 2010, Jonathan Stanchel drove his passenger, Justin Mendez, to an address Mendez requested. They parked and waited in the car. Appellant and another man, Daniel Byrd, approached the car, but Mendez would not allow Byrd into the car because Byrd had recently robbed him. Appellant got into the backseat of the car on the driver's side, behind Stanchel. What happened next is the subject of conflicting testimony.
>
> Stanchel testified that the man who got into the car put a gun against Stanchel's head and said, "Give it up," which Stanchel took to mean that he should surrender property. Stanchel instead reached for the car door and heard the gun fire. This shot apparently grazed Stanchel, as he had a gunshot wound on the back of his head near his right ear. He heard two more gunshots as he fled. Police responding to a report found passenger Mendez dead in the car with two gunshot wounds.
>
> Appellant testified that he did not have a gun that night. He said that Mendez pulled a gun and threatened him. Appellant said that he grabbed the gun, struggled with Mendez, and a shot went off. Appellant testified that he pulled the gun away from Mendez and shot twice, then returned to his vehicle. Appellant said he was gripping the gun so tightly that he bled. Appellant denied planning to rob Mendez and said that the shooting happened in the moment.
>
> Other witnesses who rode with appellant and Byrd to the meeting place testified that appellant and Byrd had a conversation that included whether appellant had a "burner," which the witnesses took to mean a gun. Joshua Dennis recalled appellant saying that he had a burner, Justin Wilson recalled appellant nodding, and Jamal Stevens remembered appellant indicating he had a gun. Dennis, Wilson, and Stevens also recalled appellant and Byrd discussing "hitting a lick," which they said can mean many things including a drug deal or a robbery. Dennis and Stevens said they did not take that discussion seriously, however, because Byrd took money to the other car and they did not see a gun beforehand. The three companions also testified that, immediately after the shooting, Byrd returned to the car saying that appellant had started shooting. Wilson testified that appellant said, "I got nervous, I got nervous, so I let off a couple shots." Byrd feared that people would seek revenge against him because he had previously robbed Mendez.

> Two men who were in jail with appellant testified that he spoke to them about the incident. One said that appellant told him that he and Byrd went to rob a man, the man moved, and the gun went off. Another said that appellant told him he shot a man when a drug deal and robbery went bad because the man would not give up his stuff. Stanchel testified that Mendez did not own or carry a gun and did not have a gun on him the night he was killed.

*King v. State*, No. 03-12-00105-CR, 2014 WL 1691642, at *1 (Tex. App.–Austin Apr. 25, 2014, pet ref'd).

## B.    Petitioner's state court criminal proceedings

A grand jury indictment returned April 12, 2010, charged Petitioner with one count of capital murder, alleging Petitioner caused the death of Justin Mendez by shooting him with a firearm in the course of committing or attempting to commit a robbery. (DE 23-37 at 8). Petitioner was appointed counsel to represent him in his criminal proceedings. (DE 23-37 at 9). Mr. Stanchel testified for the State; Mr. Byrd did not testify at Petitioner's trial. (DE 23-6 at 25-54; DE 23-8 at 59-63, 104-06). At the close of the State's case-in-chief, Petitioner's counsel moved for a directed verdict of acquittal based on a failure to identify the victim. (DE 23-8 at 19-21). Petitioner testified at his trial. (DE 23-8 at 25-49). Petitioner denied having a weapon on the night in question[1] and denied making a statement that he intended to commit a robbery. (DE 23-8 at 29). Petitioner testified that he shot the victim in self-defense with the victim's gun. (DE 23-8 at 32-38).

The jury returned a verdict of guilty on the charge of capital murder as alleged in the indictment. (DE 23-37 at 20). The trial court sentenced Petitioner to the statutory term of life in prison without the possibility of parole. (DE 23-37 at 26).

---

[1]    Q. [By Petitioner's counsel] Did you have a gun in your possession?
A. [By Petitioner] No, sir. Never had a gun before. Never carried one. Never shot one until that whole incident.
(DE 23-8 at 35).

3

Petitioner appealed his conviction through appointed counsel. Petitioner asserted the trial court erred by denying his motion for a new trial without conducting an evidentiary hearing; that his right to a fair trial was compromised because he was in a leg brace and a sheriff's deputy sat near him when he testified; that the trial court erred by overruling his objection to statements in the prosecutor's closing argument; and that the trial court erred by failing to sua sponte include a jury instruction on the lesser-included offense of felony murder. (DE 23-16). The Texas Court of Appeals denied relief and the Texas Court of Criminal Appeals refused a petition for discretionary review. *King v. State*, No. 03-12-00105-CR, 2014 WL 1691642, at *1 (Tex. App.–Austin Apr. 25, 2014, pet ref'd).

Petitioner filed an application for a state writ of habeas corpus. (DE 23-7 at 40-57). Petitioner asserted he was denied his right to due process and a fair trial because "69 [prospective] jurors of 70 indicated they could not presume the appellant innocent." (DE 23-37 at 45). Petitioner argued he was denied his right to due process and a fair trial because the trial court denied his motion to include a lesser-included offense instruction on voluntary manslaughter. (DE 23-37 at 49). Petitioner also asserted he was denied his right to due process and a fair trial because the court "allowed the State to violate Rule of Evid. 614." (DE 23-37 at 51). Petitioner asserted he was denied his right to the effective assistance of counsel because his attorney: "failed to object to the presumptive inference instruction in the charge," (DE 23-37 at 53); failed to challenge the insufficiency of the evidence by requesting a directed verdict, (DE 23-37 at 56); failed to request a felony murder instruction, (DE 23-37 at 47); and because appellate counsel failed to raise insufficiency of the evidence. (DE 23-37 at 57). Petitioner further argued he was denied his right to due process because the trial court improperly instructed the jury. (DE 23-37 at 55).

The state trial court made findings of fact and recommended that the application for habeas relief be denied. (DE 23-37 at 151-52). The trial court found and concluded:

> 3. Stanchel testified that he and Mendez were sitting in Stanchel's car when applicant got into the back seat, said "Give it up," and fired three shots when Stanchel tried to jump out of the car. One shot grazed Stanchel's head, and Mendez was found dead in the car with two bullet wounds.

> 4. Applicant claimed that Mendez had the gun and threatened him with it, but applicant managed to take it away and shoot him. He denied ever trying to rob anyone. However, some of applicant's companions said he had the gun and planned a robbery.

> 5. Applicant contends his jury panel was biased because only one member said that he could presume applicant was innocent, that he should have received an instruction on the lesser included offense of manslaughter, that the jury instruction defining "intentionally" was incorrect, and that the prosecution had violated The Rule. All of these contentions needed to be raised on appeal since they depend on the reporter's record.

> 6. Applicant contends his trial counsel was ineffective because he did not request an instruction on felony murder, should have objected to the jury charge definition of intent, and did not challenge the sufficiency of the evidence to show applicant intended to kill Mendez. The evidence did not support an instruction on felony murder because it showed applicant either intentionally fired the shots which killed Mendez during a robbery, or was defending himself from Mendez' use of unlawful deadly force. The instruction on intent tracked the Penal Code definition, so was not objectionable. Finally, Stanchel's testimony supported the finding that applicant intentionally killed Mendez in the course of a robbery.

> 7. Finally, Applicant contends appellate counsel should have challenged the sufficiency of the evidence to show an intent to kill. That evidence was sufficient, as set out previously.

(DE 23-37 at 151-52). The Texas Court of Criminal Appeals denied relief without written order.

(DE 23-34).

**C.    Petitioner's claims for federal habeas relief**

In his federal habeas action, Petitioner asserts he is entitled to relief because

1.    He was denied his right to a fair trial by an impartial jury.

2.    The trial court denied his request for a jury instruction on a lesser-included offense of manslaughter.

3.    The trial court erred by permitting the State's witnesses to testify in violation of Texas Rule of Evidence 614.

4.    The trial court erred "by including the invalid presumptive/conclusive inference on intent" in the charge to the jury.

5.    There was insufficient evidence to sustain his conviction.

6.    He was denied his right to the effective assistance of counsel because:

    (a)    his trial counsel did not apprise the jurors of the felony murder doctrine or request a jury instruction on felony murder;

    (b)    trial counsel failed to object to the presumptive/conclusive inference instruction in the charge to the jury;

    (c)    trial counsel failed to request a directed verdict based on insufficient evidence of guilt; and

    (d)    his appellate counsel was unconstitutionally ineffective because he failed to assert an insufficiency of the evidence claim in Petitioner's appeal.

Petitioner seeks relief in the form of "acquittal." Alternatively, he asks the Court to reverse his conviction and remand the matter for a new trial or to "reform" his conviction to the lesser-included offense of murder. (DE 1 at 7).

Respondent contends that some of Petitioner's claims are procedurally barred and that all of his claims are without merit. Specifically, Respondent argues that Petitioner's claim regarding the sufficiency of the evidence is unexhausted and procedurally defaulted because Petitioner did not raise this claim in his appeal or in his state action for habeas relief. (DE 22 at 2 n.1 & 5 & 7). Respondent contends that Petitioner's claim regarding jury bias is barred because he procedurally

defaulted this claim in the state courts by failing to raise the claim at trial and in his appeal. (DE 22 at 14).

In his replies to the response to his petition, Petitioner allows: "The petitioner would concur to the dismissal of Three, Five, Six (a & c), & Seven [presumably claim 6(d)] at this time." (DE 26 at 1 & DE 29 at 1). In his replies Petitioner argues only the merits of claims 1, 2, 4, and 6(b). (DE 26 & DE 29). Because Petitioner allows that his third and fifth claims, and portions of his sixth claim, should be dismissed, the undersigned will address only the other claims for relief.

## ANALYSIS

### A. Exhaustion and procedural default

A fundamental prerequisite to federal habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of all claims in the state courts prior to docketing a section 2254 petition. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir. 1995). "[A]bsent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief." *Orman v. Cain*, 228 F.3d 616, 619-20 (5th Cir. 2000), *citing* 28 U.S.C. § 2254(b)(1).

Section 2254(b) provides:

(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that:
(A)     the applicant has exhausted the remedies available in the courts of the State . . .

Pursuant to the Antiterrorism and Effective Death Penalty Act, federal courts lack the power to grant habeas corpus relief on unexhausted claims. *Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003). This requirement is designed in the interests of comity and federalism, to give state courts the

initial opportunity to address and correct errors of federal law in a state prisoner's conviction. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

To properly exhaust his state remedies, a petitioner must fairly present his claims to the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Shute v. State of Tex.*, 117 F.3d 233, 237 (5th Cir. 1997). In Texas, the highest state court with jurisdiction to review the validity of a state criminal conviction is the Texas Court of Criminal Appeals. *Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001); *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been "fairly presented" to the highest state court, i.e., the petitioner presents his claims to the state courts in a procedurally proper manner. *Baldwin*, 541 U.S. at 29-32; *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002).

A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default. *Matchett v. Dretke* , 380 F.3d 844, 848 (5th Cir. 2004); *Nobles v. Scott*, 127 F.3d 409, 420 (5th Cir. 1997); *Gutierrez v. Dretke*, 392 F. Supp. 2d 802, 821-22 (W.D. Tex. 2005). The doctrine of procedural default requires a federal habeas court to refuse review of all claims the state courts found defaulted pursuant to "an independent and adequate state procedural rule," unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989). A procedural default only bars federal habeas review when the state procedural rule which forms the basis for the procedural default was "firmly established and regularly followed" at the time it was applied to preclude state judicial review of the merits of a

federal constitutional claim. *Ford v. Georgia*, 498 U.S. 411, 424 (1991). A state procedural ground is "independent" if the last reasoned state court opinion clearly and expressly indicates that its decision is independent of federal law. *Reed v. Scott*, 70 F.3d 844, 846 (5th Cir. 1991).

Petitioner presented his federal habeas claims 1, 2, 4, and 6(b), the claims he continues to pursue in this matter, to the Texas state courts in his application for a state writ of habeas corpus pursuant to Texas Code of Criminal Procedure Article 11.07. The state trial court made findings of fact and conclusions of law pursuant to Article 11.07(3)(d). The Texas Court of Criminal Appeals denied the application for a writ of habeas corpus without written order. Although the state trial court found some of the claims procedurally barred, the Texas Court of Criminal Appeals did not explicitly adopt this conclusion of law.

The Texas Court of Criminal Appeals' decision denying Petitioner's application for a state writ of habeas corpus was an adjudication on the merits of the claims, notwithstanding it was without written order. *Salazar v. Dretke*, 419 F.3d 384, 398-99 (5th Cir. 2005); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex Parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits."). When the Texas Court of Criminal Appeals denies a habeas application, signifying its rejection of the merits of the application, it is presumed that the rejection of the application was not based on an adequate and independent state ground. *Bledsue v. Johnson*, 188 F.3d 250, 257 (5th Cir. 1999).

Accordingly, Petitioner properly exhausted his federal habeas claims in the state courts by presenting them in his application for a state writ of habeas corpus and the Texas Court of Criminal

Appeals' denial of relief was based on the merits of the claims rather than an adequate and independent state ground.

**B.      The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court summarized the basic principles established by the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA") in *Harrington v. Richter*, 562 U.S. 86, 97-100 (2011). Section § 2254 provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court stated that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* The deference due to a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted). The Supreme Court reaffirmed that "a state court need not cite nor even be aware of our cases under § 2254(d)" for its opinion to be entitled to deference. *Id.*, *citing Early v. Packer*, 537 U.S. 3, 8 (2002). When a

state court decision denying relief is unexplained, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.*

Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100, *citing* 28 U.S.C. § 2254(d), *and Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Mitchell v. Esparza*, 540 U.S. 12, 10 (2003).

Under the unreasonable application clause of § 2254(d), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quotation and citation omitted). A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.

> It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Harrington*, 562 U.S. at 102-03 (internal citations omitted). The Supreme Court, "time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Grim v. Fisher*, 816 F.3d 296, 304 (5th Cir.), *cert. denied*, 137 S. Ct. 211 (2016) (internal quotations omitted).

The provision of § 2254 which allows the granting of federal habeas relief when the state court made an unreasonable determination of the facts is limited by the next section of the statute, § 2254(e). Section 2254(e)(1) requires a federal court to presume state court factual determinations to be correct, although a petitioner can rebut the presumption by clear and convincing evidence. This presumption extends not only to express findings of fact, but also to the implicit findings of the state court. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). Absent a showing of clear and convincing evidence, the federal court must give deference to the state court's factual findings. 28 U.S.C. § 2254(e)(1); *Ward v. Stephens*, 777 F.3d 250, 256 (5th Cir.), *cert. denied*, 136 S. Ct. 86 (2015).

The AEDPA's deferential standard is afforded to a state court decision only when the state court adjudicated the petitioner's claims on the merits. 28 U.S.C. § 2254. This is akin to asking whether the state court decision was substantive or procedural. *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir.1999) (*quoting Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). As previously noted, when the Texas Court of Criminal Appeals denies relief in a state habeas action, as compared to dismissing the action, this signifies that the court has denied the substance of the claims. And when

state habeas relief is denied without an opinion examining the merits of the claims, this Court must assume that the state court applied the proper "clearly established Federal law," and then determine whether the state court decision was "contrary to" or "an objectively unreasonable application of" that law. *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

## C.      Impartiality of the jury (Claim 1)

In his state habeas action Petitioner asserted he was denied his right to an impartial jury because prospective jurors "admitted on the record during voir dire [that] they could not presume petitioner's innocence prior to trial and were NOT properly rehabilitated." (DE 23-37 at 45) (emphasis in original). The State argued that this claim was procedurally barred and the state trial court agreed the claim was procedurally barred. The Texas Court of Criminal Appeals denied relief without written order, without adopting or rejecting the trial court's finding that the claim was procedurally barred.

In his federal habeas action, Petitioner asserts: "The record reflects no affirmation by [prospective] jurors that they may be inclined to grant mandatory presumption of innocence . . . What the prosecution clearly failed to do . . . is persuade the venire panel to make a commitment on record." (DE 2 at 12). Petitioner's assertion that the voir dire panel was biased is predicated on the following statements by defense counsel and responses by the veniremen:

> If I asked you now as the defendant sits here now if you had to vote would you vote guilty, not guilty, or I don't know? How many of you would say I would vote guilty? And it's okay if you say so. You know what, Weber, I heard what you said, I don't care, this is my belief. Is there anyone here who would vote guilty? It's perfectly all right. I'm not going to yell at you, I promise. How many of you would say I don't know, I haven't heard the evidence? And how many of you would say not guilty? One. Well, the only one that has made the right, no disrespect to all of you-all, but the only one that made the legal, what you're required to sit on a jury, is this gentleman. As he sits here now, he is not guilty.

* * *

So as everyone sits here now, I'll ask the question again, is there anyone – if I ask you the question now knowing the law, as he sits here now is my client innocent, guilty or not guilty, how many are going to say – I'm sorry, I messed it up. You don't know, you haven't heard any evidence, guilty or not guilty, how many are going to say I don't know, I haven't heard any evidence? Okay. You-all get an A. How many of you are going to say guilty? And how many of you are going to say not guilty? Okay. Will all of you make the commitment you will hold the State to those burdens the same as you would expect if you were charged with a crime and you understand what's involved?

THE JURY: Yes.

MR. WEBER: All right

(DE 23-5 at 174-75; 179-80).

The Sixth and Fourteenth Amendments guarantee a defendant the right to an impartial jury. *Parker v. Gladden*, 385 U.S. 363, 364 (1966); *King v. Lynaugh*, 850 F.2d 1055, 1058 (5th Cir. 1988). "Due process means a jury capable and willing to decide the case solely on the evidence before it . . ." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). A jury is "initially cloaked with a presumption of impartiality." *De La Rosa v. State of Tex.*, 743 F.2d 299, 306 (5th Cir. 1984). When determining if a defendant's right to an impartial jury has been violated, the pertinent inquiry is whether the *jurors* who actually served were impartial, rather than whether the *venire panel* was impartial. *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988); *Jones v. Dretke*, 375 F.3d 352, 355 (5th Cir. 2004). The standard for determining if a juror was biased is whether the juror's views would prevent or substantially impair the performance of his duties. *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000). "In evaluating claims of juror partiality, we must consider whether the jurors in a given case had such fixed opinions that they could not judge impartially the guilt of the defendant." *Chavez v. Cockrell*, 310 F.3d 805, 811 (5th Cir. 2002) (internal quotation omitted). Bias may be actual or

implied, i.e., it may be revealed through express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed as a matter of law. *Brooks v. Dretke*, 444 F.3d 328, 329-30 (5th Cir. 2006).

Prior to voir dire, several veniremen were dismissed for cause because they represented to the court that they could not be impartial. (DE 23-5 at 29-30, 39-40, 61-62, 76-77). The voir dire panel was queried with regard to bias, prejudice, and partiality. (DE 23-5 at 95-97). The voir dire panel was asked about their understanding regarding the presumption of innocence, and a juror gave an accurate definition of the presumption of innocence. (DE 23-5 at 99). The prosecutor stated:

> So as the defendant sits here today, he is presumed innocent. And if you cannot give him that presumption of innocence as a juror starting out, then you're not going to be considered a fair and impartial juror in this case. Does everybody understand that? Does that make sense to everybody? . . . And once the State meets its burden of proof, which we'll talk about, then that presumption of innocence can go away if the jury finds that he has committed the crime beyond a reasonable doubt. Does that make sense to everybody? Okay. So innocent until proven guilty by evidence presented in court.

(DE 23-5 at 99).

Nineteen veniremen indicated they would have difficulty convicting Petitioner absent scientific evidence of guilt. (DE 23-5 at 114-22). Several of the voir dire panel told the court they could not be impartial because they would be influenced by personal experience or because of the range of punishment. (DE 23-5 at 126-37). None of the veniremen who indicated they could not be impartial or could not be biased were seated.

Defense counsel insured that the veniremen could presume Petitioner innocent until proven guilty. In addition to colloquies between defense counsel and the panel which Petitioner cites in support of his argument, defense counsel also asked the panel: "Will you raise your hand if you will

hold the State to that burden, beyond a reasonable doubt?" (DE 23-5 at 175) (The record seems to indicate the panel all raised their hands, as counsel then stated: "I notice those officers aren't lifting them very high. I'm just kidding."). Defense counsel then asked: "Is there anyone that will not hold them to that standard? Anybody? Okay." (DE 23-5 at 176). This last statement indicates that counsel confirmed the entire panel averred they could presume Petitioner's innocence and require the State to prove him guilty beyond a reasonable doubt. At the end of his voir dire, defense counsel asked: "Will all of you make the commitment you will hold the State to those burdens the same as you would expect if you were charged with a crime and you understand what's involved?" and the panel responded "Yes." (DE 23-5 at 179-80). This last statement also indicates the entire panel declared they could presume Petitioner's innocence and require the State to prove him guilty beyond a reasonable doubt.

Petitioner does not allege that any specific juror was biased, but instead asserts that the venire panel did not confirm on the record that it could afford him the presumption of innocence. This allegation arguably does not state a claim for the violation of Petitioner's right to due process because Petitioner has not shown that any seated juror demonstrated bias in violation of Petitioner's right to an impartial jury. *Chavez*, 310 F.3d at 811 (collecting cases); *Willie v. Maggio*, 737 F.2d 1372, 1379 (5th Cir. 1984). And, contrary to Petitioner's claim that only one person on the venire panel stated they could presume his innocence, the entire panel confirmed on at least one occasion that they could hold the State to its burden of proof. Because the record does not support a conclusion that the jurors who served in Petitioner's trial were biased, this claim is without merit and the state court's decision denying the claim was not an unreasonable application of federal law.

**D.      Requested jury instruction on lesser-included offense (Claim 2)**

At trial, Petitioner's counsel asked for a jury instruction on the charge of voluntary manslaughter, which was denied. (DE 23-8 at 82-83). In his state habeas action Petitioner argued that the trial court erred by not instructing the jury on a charge of voluntary manslaughter, (DE 23-37 at 49), a claim denied by the Texas Court of Criminal Appeals.

Federal habeas relief may not be granted absent the violation of a federal constitutional right. "[I]n a non-capital case, the failure to give an instruction on a lesser-included offense does not raise a constitutional issue." *Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998); *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985). Absent a violation of the United States Constitution, a federal habeas court must defer to the state court's interpretation of its own law on whether a lesser-included offense instruction is warranted. *Creel*, 162 F.3d at 390-91; *Valles v. Lynaugh*, 835 F.2d 126, 128 (5th Cir. 1988).

Even if the failure to include a lesser-included offense instruction posed a constitutional issue that the Court might analyze on its merits, relief is not warranted. A lesser-included offense instruction is required under Texas law when a less-serious offense is encompassed within the elements of the charged offense and there is some evidence in the record that the defendant may be guilty of the lesser-included offense. *Rousseau v. Texas*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). "It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Jones v. Johnson*, 171 F.3d 270, 274 (5th Cir. 1999).

In support of his argument that there was evidence of manslaughter, i.e., "reckless conduct," Petitioner asserts:

> The recklessness of the petitioner's conduct is glaring. The record indicates that the jury determined the petitioner shot the driver of the vehicle [Mr. Stanchel] in the (right ear) while sitting behind him in the vehicle. This fact in and of itself demonstrates that the petitioner had (no intent) to cause a death. If so, he could easily have shot the driver point blank in the back of the head.

(DE 2 at 17). Petitioner also argues that there was sufficient evidence of reckless conduct because there was evidence that he and the victim "wrestl[ed] over control of a weapon in a moving vehicle without a driver," constituting "a near perfect example of a reckless act." (DE 2 at 19). Petitioner asserts that "Absolutely No One testified, nor did the evidence show, that Mr. King had any intentions what-so-ever to deliberately cause the victim's death." (DE 2 at 20).

Contrary to Petitioner's assertion that "No One" testified that Petitioner intended to shoot the victim, Petitioner himself testified that he struggled with the victim over the gun and shot the victim in self-defense: "I got my hand on the pistol now . . . I shoot twice, you know what I'm saying." (DE 23-8 at 33). In response to the question: "But you did shoot Justin Mendez because you had a reasonable belief [that if you] didn't you would be dead?" Petitioner replied: "Yes, sir. And just really happened in the moment, really." (DE 23-8 at 38). And contrary to Petitioner's statement in his habeas petition that "he could easily have shot [Mr. Stanchel] point blank in the back of the head," Petitioner testified at his trial that Mr. Stanchel was shot as he and the victim wrestled over the gun. (DE 23-8 at 32).

Additionally, Mr. Stanchel testified that Petitioner "pointed the gun" at Mr. Stanchel immediately upon getting in the vehicle, that he "felt the gun on the back of my head," and that Petitioner fired the weapon ("he just let it go") just as Mr. Stanchel was escaping from the vehicle.

(DE 23-6). This testimony supports the jury's conclusion that Petitioner possessed a gun when he entered the vehicle and that the jury found Petitioner not credible when he testified that he did not intend to shoot the victim. Another witness testified that, after returning to their car after the shooting, Petitioner stated: "I'm nervous by nature so I started shooting." (DE 23-6 at 99). A second witness also testified that, after the shooting, Petitioner stated: "I got nervous, so I let off a couple shots." (DE 23-6 at 135). This testimony supports the conclusion that Petitioner intended to shoot the victim.

Texas state law does not require that the intent to cause death be formulated prior to the actual shooting. *Rousseau v. State*, 855 S.W. 2d 666, 674 (Tex. Crim. App. 1993). The specific intent to kill may be inferred from the act of shooting a loaded gun toward a person at close range. *Cavazos v. State*, 382 S.W. 3d 377, 384 (Tex. Crim. App. 2012); *Lay v. State*, 359 S.W. 3d 291, 296 (Tex. App.–Texarkana 2012, no pet.). Other than Petitioner's own statements, there was no evidence that the gun simply "went off" as Petitioner and the victim wrestled over control of the weapon. A defendant's "denial that he intended to kill the victim does not, of itself, raise the issue of manslaughter." *Munoz v. State*, 932 S.W.2d 242, 245 (Tex. App.– Texarkana 1996, no pet.). "To raise the issue of manslaughter, there must be evidence of a lack of intent to kill and evidence that [the defendant] acted recklessly while ignoring a known risk." *Id.*

When the state trial court asked why the charge to the jury should include an instruction on manslaughter, Petitioner's counsel replied "I believe there is evidence of that in the testimony," without elaborating as to that evidence. (DE 23-8 at 83). The prosecutor responded: "Your Honor, there is no evidence of a reckless killing in this case. It is either robbery or straight murder and then the claim of self-defense. There is no reckless allegation." The trial court concluded: "I do not find

the evidence supports said request for inclusion of the charge." *Id.* This conclusion by the state court was not an unreasonable assessment of the evidence presented at trial, or an unreasonable interpretation of state law with regard to the inclusion of a jury instruction on the lesser-included offense of manslaughter.

Petitioner has not presented clear and convincing evidence to rebut the Texas Court of Criminal Appeals' determination that a lesser-included offense instruction was not warranted. *Dowthitt*, 230 F.3d at 757-58. Because the state court's decision denying relief was not unreasonable and its interpretation of state law is entitled to deference, federal habeas relief is not warranted on the basis of this claim.

### E.    Inclusion of "presumptive/conclusive inference" instruction in charge (Claim 4)

Petitioner argues:

> There was no evidence upon which the jurors could have rationally found that the petitioner had "deliberately" caused the victim's death. However, in this case, the State was essentially relieved of it's burden to prove intent; beyond reasonable doubt, or otherwise due to the invalid disjunctive option that sponsored and invited a presumptive/conclusive inference that "intent" was presumed based merely upon a finding that the petitioner had voluntarily engaged in the commission of the act that resulted in the victim's death.

(DE 2 at 29, *citing Sandstrom v. Montana*, 442 U.S. 510 (1979), *and Cook v. State*, 884 S.W. 2d 485 (Tex. Crim. App. 1995).  Petitioner raised this claim in his application for state habeas relief. The state trial court determined that the jury instruction was not erroneous because it followed the language of the relevant statute, section 6.03(a) of the Texas Penal Code. The Texas Court of Criminal Appeals denied the claim on the merits without explanation.

In his federal habeas petition, Petitioner contends that the use of the word "or" in Texas Penal Code § 6.03(a) and the jury instructions violated his right to due process and a fair trial. The statute (with emphasis added) provides:

(a)     A person acts intentionally, or with intent, with respect to the nature of his conduct *or* to a result of his conduct when it is his conscious objective or desire to engage in the conduct *or* cause the result.

The charge to Petitioner's jury contained the following instructions:

1.

A person commits the offense of capital murder if he intentionally causes the death of an individual and was then and there in the course of committing or attempting to commit the offense of robbery.

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual.

9.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acting knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware his conduct is reasonably certain to cause the result.

***

11.

. . . if you believe from the evidence beyond a reasonable doubt that the defendant, David Jollone King, on the 6th day of January 2010, in the County of Travis and State of Texas, did then and there intentionally or knowingly cause the death of Justin Mendez by shooting him with a firearm as alleged in the indictment, you will find the defendant guilty of murder and so say by your verdict; unless you further find from the evidence, or have a reasonable doubt thereof, that the defendant reasonably believed or is presumed to have reasonably believed that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the

21

use or attempted use of unlawful deadly force by the said Justin Mendez or to prevent the imminent commission by the said Justin Mendez of murder, in which case you will acquit the defendant and say by your verdict "not guilty."

(DE 23-37 at 10, 16). Petitioner maintains that the use of the word "or" in the jury instruction regarding intent allowed the jury to find him guilty based on committing the "act" of firing a weapon even if he did not intend to cause the result of death. (DE 2 at 29). Petitioner argues this improperly shifted the burden of proof with regard to the element of intent. *Id.*

Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (holding that federal habeas courts do not grant relief solely on the basis that a jury charge was erroneous). The relevant inquiry on claims of improper jury instructions by a state court is not whether state law was violated, but whether there was prejudice of constitutional magnitude. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002); *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986). Errors in jury instructions are subject to harmless-error analysis. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Thus, even if the instruction was erroneous, habeas corpus relief is not warranted unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993); *Galvan*, 293 F.3d at 764-65.

A jury instruction which improperly shifts the burden of proof from the state to the defendant is per se not harmless error. *Francis v. Franklin*, 471 U.S. 307, 326 (1985). When determining whether the instruction was erroneous and improperly shifted the burden of proof, "it is well-established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (internal quotation marks omitted). The Court must determine whether there is a reasonable likelihood that

the jury applied the challenged instruction in a way that violated the United States Constitution. *Id.*; *Hughes v. Johnson*, 191 F.3d 607, 627-28 (5th Cir. 1999).

If the "jury may have interpreted the [subject] instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their 'ordinary' consequences), unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence," then the instruction effectively shifted the burden of persuasion on the element of intent to Petitioner. *Mason v. Balkcom*, 669 F.2d 222, 226 (5th Cir. 1982). In *Sandstrom v. Montana*, 442 U.S. 510, 517 (1979), the Supreme Court held that an instruction that had the effect of relieving the state of the burden of proof on the critical question of the defendant's state of mind violated due process, 442 U.S. at 521, "notwithstanding the fact that the trial court had given other instructions that correctly stated the state's burden of proof." *Mason*, 669 F.2d at 226.

Although possibly erroneous, a jury instruction does not violate a defendant's federal constitutional rights when the jury is given a "nature of conduct" instruction (where the jury is allowed to infer intent based on the defendant's voluntary performance of a specific act), in addition to a "result of" instruction (an intent instruction that refers to the result of the offense), where no harm results from the inclusion of the "nature of conduct" language. *Rodriguez v. Johnson*, 104 F.3d 694, 700 (5th Cir. 1997); *Hughes v. Johnson*, 991 F. Supp. 621, 634 (S.D. Tex. 1998).

In this matter, Mr. Stanchel testified that Petitioner brandished a firearm, instructed the victim to relinquish the drugs in his possession, and then fired his weapon at Mr. Stanchel and the victim. Petitioner testified that he killed the victim in self-defense, allowing that he intended to shoot the victim. "'In presenting a defense such as alibi, insanity, or self-defense, a defendant may in some cases admit that the act alleged by the prosecution was intentional, thereby sufficiently reducing the

likelihood that the jury applied the erroneous instruction as to permit the appellate court to consider the error harmless.'" *Garcia*, 454 F.3d at 448, *quoting Connecticut v. Johnson*, 460 U.S. 73, 87 (1983); *Johnson v. State*, 915 S.W.2d 653, 658 (Tex. Ct. App.–Houston 1996, pet. ref'd) ("the question in determining whether a homicide was criminal was whether the act was voluntary or involuntary, not whether the homicide was intentional or not."). In reaching a guilty verdict on the charge of capital murder and rejecting the assertion of self-defense, the jury necessarily determined that Mr. Stanchel's testimony was credible, constituting sufficient evidence to find Petitioner intended the result of killing Mr. Mendez. The burden of proof on the element of intent was not improperly shifted to the defense.

Accordingly, the jury instruction was not applied in an unconstitutional manner and the Texas Court of Criminal Appeals' decision denying this claim was not an unreasonable application of federal law. Because the Texas Court of Criminal Appeals' decision denying this claim was not an unreasonable application of federal law, Petitioner is not entitled to habeas relief on this claim.

## F.     Trial counsel was ineffective in failing to object to the charge (Claim 6(b))

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Accordingly, to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's representation fell below an objective standard of reasonableness and a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* The deference to state court determinations of a petitioner's habeas claims is heightened when the petitioner asserts a *Strickland* claim. To be entitled to habeas relief,

> [t]he state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. ___, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014) (internal quotation marks omitted). When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . ."

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

The prejudice prong of *Strickland* provides for federal habeas relief only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S.. at 694. "'The likelihood of a different result must be substantial, not just conceivable.'" *Trevino v. Davis*, 829 F.3d 328, 351 (5th Cir. 2016), *quoting Brown v. Thaler*, 684 F.3d 482, 491 (5th Cir. 2012). Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).

Trial counsel's failure to object does not constitute deficient representation unless a sound basis exists for objection. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (holding a futile or meritless objection cannot be grounds for a finding of deficient performance). To succeed on such

a claim, a petitioner must show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *Strickland*, 466 U.S. at 694. Failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Additionally, if a state appellate court found a claim based on state law without merit, counsel's failure to assert the claim is not prejudicial because federal habeas courts are to review state court misapplications of federal law, and the Court may not rule that a state court incorrectly interpreted its own law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Garza v. Stephens*, 738 F.3d 669, 677 (5th Cir. 2013); *Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011).

Petitioner has not shown that an objection to the jury instruction would have been sustained or that the jury instruction was determinative of the finding of guilt. Accordingly, the Texas Court of Criminal Appeals' decision rejecting this claim was not an unreasonable application of *Strickland* and the Court may not grant habeas relief on this claim.

## CONCLUSION

None of Petitioner's claims for federal habeas relief are meritorious. Petitioner was not denied his right to due process or a fair trial, and Petitioner was not denied his right to the effective assistance of trial counsel.

## RECOMMENDATION

It is, therefore, recommended that Petitioner's Application for Writ of Habeas Corpus be **DENIED**.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

27

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED this 22nd day of June, 2017.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE